RUFUS T. ROCKWELL vs. THE NEW YORK & NEW ENG-LAND RAILROAD COMPANY.

By statute certain special duties as to fencing are imposed on railroad companies whose road has been constructed under acts of incorporation passed after the first Wednesday of May, 1850. A railroad company was chartered in 1845, the powers and privileges of which passed to several companies in succession, which were chartered for the purpose of taking them, until finally the bondholders of the last company were incorporated in 1873, with the powers and privileges of that company. The last preceding company had purchased the *locus in quo* in 1868 for the purpose of laying its track over it, but the road was not built upon it until 1875, when it was constructed by the bondholders' company. Held that the road was to be regarded as constructed under the last act of incorporation and not under the first.

[Argued November 23d, 1883—decided February 1st, 1884.]

ACTION for damages for the killing of an ox of the plaintiff's by a locomotive run by the defendant, a railroad company; brought to the court of Common Pleas, and tried before *Hall, J.* Facts found and judgment rendered for the plaintiff. Appeal by the defendant. The case is fully stated in the opinion.

*S. E. Baldwin,* and *J. E. Walsh,* for the appellant.

*L. D. Brewster,* for the appellee.

PARDEE, J. In 1833 the Manchester Railroad Company was chartered to build a railroad from Hartford to Bolton.

In 1845 the New York and Hartford Railroad Company was chartered to build a railroad from Hartford through Danbury to the state of New York; and in 1847 it was authorized to contract with any other railroad company for the building, working and management of the road. .

In 1847 the Hartford, Providence and Fishkill Railroad company was chartered, with authority to take the rights granted to the Manchester Railroad Company, to build a railroad to Willimantic and to make joint stock with any other railroad company in this or any adjoining state; and in 1848 it was authorized to build a railroad to Rhode Island. In 1849 the New York and Hartford Railroad Company; and the Hartford, Providence and Fishkill Railroad Company, were consolidated, under the name of The Hartford, Providence and Fishkill Railroad Company, with power to take the rights given to the two, and to build a road from Providence to Fishkill. It built a road as far eastward as Willimantic in 1849, and to Providence in 1854. In 1858, its road being completed westward from Hartford to Waterbury, it passed into the hands of trustees for bondholders under mortgages. In 1863 the legislature chartered the Boston, Hartford and Erie Railroad Company, with power to buy the Hartford, Providence and Fishkill Railroad franchise and extend the road eastward to Boston and westward to Fishkill. In 1868 this company purchased the *locus in quo*, which was in the line of location of some one of the prior corporations, but did not complete a road over it; and prior to 1873 its franchise passed into the possession of trustees for bondholders under the Berdell mortgage. In the last named year the legislature chartered these bondholders under the name of the New York and New England Railroad Company, with power to enter upon and take land over which either of these named preceding corporations had located or over which itself should locate a line of railroad for the construction of a road. In 1875 it built and has since operated its road over the *locus in quo*. In August, 1882, without negligence upon the part of the plaintiff, his ox strayed upon the unfenced track of the defendant and,

was killed by its cars. He instituted this suit for damages, had judgment and the defendant appeals.

The statute (Acts of 1881, p. 35, § 1,) provides that "every railroad company shall erect and maintain fences on the sides of the railroads operated by it, at such place or places as the railroad commissioners shall direct, and every railroad company operating any railroad constructed under any act of incorporation passed since the first Wednesday of May, 1850, or hereafter constructed, shall cause sufficien fences to be erected and maintained on the sides of such railroads, except at such place or places as the railroad commissioners shall adjudge them unnecessary; such fences to be erected by all companies hereafter organized within twelve months after they enter upon and take possession of the lands through which their railroads pass."

It is the claim of the defendant that this statute does not require it to fence its railroad at the place in question; that it is to be regarded as operating a railroad constructed under an act of incorporation passed prior to 1850, by reason of the rights, powers and privileges conferred by the General Assembly upon certain other railroad companies, to which rights it had by law succeeded, and by the force of the provisions of the acts of incorporation of said companies, and of itself.

But the defendant is a corporation quite distinct from and independent of any other—so created in 1873. To it was given the power to acquire a section of completed railroad constituting a portion of a contemplated line extending from Boston to the Hudson River, and construct the unfinished part. Of course its charter is not in the form of words in which it would have been had it been the first grantee of the right to build. The legislature conferred upon it power to do what other corporations had been authorized to do and had failed to accomplish. Its charter avoids repetition in detail of the franchises given to and surrendered by these, and in the interest of brevity and certainty refers to former charters, not as the source, but as the measure of the power granted to it. No previous corporate life is

renewed or extended; franchises are taken from the hands of dead corporations and put into those of a living one. The defendant laid its track and runs its cars over the land in question in its own name and because of its own power; not in the name nor by the power of any other; it has done nothing because of any charter to another; but everything because of the grant of power to itself. Moreover, the statute proceeds upon the idea that railroad companies chartered before 1850 had paid to land-owners the cost of fencing in addition to the value of land taken; it requires such to fence only where the railroad commissioners direct; also that companies chartered in or subsequent to 1850 had not paid the cost of fencing; and requires such to fence everywhere unless they obtain permission from the commissioners to omit. The land in question was acquired by purchase in 1868, but there is neither proof nor presumption that the cost of fencing was added to the value of the land. Therefore both by the spirit and the letter of the statute the defendant rests under the obligation to fence the place in question unless excused by the commissioners.

There is no error in the judgment complained of.

In this opinion the other judges concurred.